ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUIS ALBERTO VILLANUEVA CRUZ, ET AL.<br><br>Apelados<br><br>v.<br><br>BARTOLO LUIS PAGÁN RODRÍGUEZ, ET AL.<br><br>Apelantes | KLAN202300986<br><br>consolidado con | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil Núm.:<br>C AC2018-0115<br><br>Sobre:<br>Reivindicación; Daños y Perjuicios |
| LUIS ALBERTO VILLANUEVA CRUZ, ET AL.<br><br>Recurridos<br><br>v.<br><br>BARTOLO LUIS PAGÁN RODRÍGUEZ, ET AL.<br><br>Peticionarios | KLCE202301223 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil Núm.:<br>C AC2018-0115<br><br>Sobre:<br>Reivindicación; Daños y Perjuicios |

Panel integrado por su presidenta la Juez Lebrón Nieves, la Jueza Santiago Calderón[2] y la Jueza Boria Vizcarrondo

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de septiembre de 2025.

Comparecen ante nos, el señor Bartolo Pagán Rodríguez, la señora Noemí Oliveras Serrano y la sociedad legal de gananciales compuesta por ambos (matrimonio Pagán-Oliveras o apelantes), mediante recurso de *Apelación* denominado alfanuméricamente como KLAN202300986, y, mediante recurso de *Certiorari* designado

---

[1] Mediante la Orden Administrativa OATA-2023-212 del 6 de diciembre de 2023, fueron reasignados los recursos de epígrafe a la Hon. Lersy G. Boria Vizcarrondo en sustitución de la Hon. Eileen J. Barresi Ramos.

[2] El 12 de mayo de 2025, los recursos fueron reasignado a la Hon. Grisel M. Santiago Calderón mediante memorando de Reasignación de Recursos cursado por la Hon. Gloria M. Lebrón Nieves, Presidenta del Panel Especial.

alfanuméricamente como KLCE202301223, presentados ambos el 3 de noviembre de 2023.

En los recursos, nos solicitan que revoquemos la *Sentencia*[3] emitida el 1 de agosto de 2023, notificada el 3 de agosto del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o foro primario) y la *Orden*[4] dictada por ese mismo foro, el 3 de octubre de 2023 y notificada el día posterior. Por virtud de la *Sentencia*, el TPI declaró *Ha Lugar* la demanda de reivindicación de terreno presentada por el señor Luis Alberto Villanueva Ortiz, la señora Olga Iris Oliveras Serrano y la sociedad legal de gananciales compuesta por ambos (señor Villanueva, señora Olga Oliveras y en conjunto, matrimonio Villanueva-Oliveras), y desestimó la reconvención[5] presentada por el matrimonio Pagán-Oliveras. Con relación a la *Orden* dictada, declaró *Ha Lugar* el memorando de costas presentado por el matrimonio Villanueva-Oliveras e impuso el pago de tres mil ochenta y cuatro dólares con ochenta y cinco centavos ($3,084.85).

Por los fundamentos que discutiremos a continuación, **modificamos** la *Sentencia* apelada y, así modificada, la **confirmamos**. Referente al auto de *Certiorari*, **denegamos** el recurso.

**I.**

A continuación, resumimos los hechos pertinentes para la disposición de los recursos. El 15 de junio de 2018, el matrimonio Villanueva-Oliveras instó *Demanda*[6] contra el matrimonio Pagán-Oliveras. En síntesis, presentaron una acción de reivindicación y, además, una reclamación de daños y perjuicios. Estos alegaron que, el matrimonio Pagán-Oliveras había tomado posesión de una

---

[3] Anejo I A, págs. 1–9 del recurso de *Apelación*.
[4] Anejo IV, pág. 53 del recurso *Certiorari*.
[5] *Sentencia Enmendada* bajo la orden de la R. 83. 14 LPRA Ap. XXII-B, R. 83.1.
[6] Expediente original.

porción de su propiedad. Esbozaron que son dueños en pleno dominio de una propiedad en Ciales, cuya descripción es la siguiente:

> Rústica: Localizada en el Barrio Pesas del término municipal de Ciales, Puerto Rico, con una cabida superficial de QUINIENTOS VEINTINUEVE PUNTO CINCO MIL NOVECIENTOS NOVENTA Y DOS METROS CUADRADOS (529.5992 m.c.) equivalente a punto mil trescientos cuarenta y siete diezmilésimas de otra cuerda (.1347 cdas.) y en lindes, por el Norte, en varias alineaciones que suman cincuenta y cinco punto seiscientos cincuenta metros lineales (55.650) con franja de terreno dedicada a uso público que separa carretera municipal, por el Sur, en dos alineaciones que suman cincuenta y siete punto doscientos noventa y seis metros lineales (57.926) con Jorge San Miguel y Leodoro Oliveras, por el Este, en una sola alineación de diecisiete punto ochocientos cuarenta y cinco metros lineales (17.845) con entrada vecina a la carretera número ciento cuarenta y nueve (149) y por el Oeste, en una sola alineación de cero punto ochocientos veintidós metros lineados (0.822) con Adolfo Arbelo[7].

Conjuntamente, adujeron que adquirieron la propiedad mediante Escritura de Compraventa número 205 del 7 de julio de 2000[8] ante notario José Oscar San Miguel y el tracto registral conforma la *Escritura de Segregación* Número 40 del 29 de abril de 1985 ante notario Cabiya Ortiz, la cual se registró en el Registro de la Propiedad de Manatí desde 1987. Como parte de sus alegaciones, incluyeron las escrituras mencionadas, así como el plano de inscripción de la propiedad, y también, la aprobación de la Administración de Reglamentos y Permisos, Oficinal Regional de Arecibo, del plano de inscripción con fecha del 12 de abril de 1985.

A su vez, argumentaron que desde que firmaron las escrituras (en el año 2000) habían disfrutado de forma pacífica e ininterrumpida la posesión de su propiedad. No obstante, en el año 2015, el matrimonio Pagán-Oliveras les comunicó que una porción de la propiedad no era de ellos, sino que les pertenecía a ellos (al matrimonio Pagán-Oliveras). El matrimonio Villanueva-Oliveras

---

[7] Consta inscrita al folio ciento ochenta (180) vuelto del tomo doscientos catorce (214) de Ciales, finca número diez mil ciento seis (10,106) del Registro de la Propiedad, Sección de Manatí.
[8] Inscrita en el Folio 13 del Tomo 301 de Ciales, finca 10106, registro de la Propiedad de Manatí, Inscripción cuarta.

manifestó que el matrimonio Pagán-Oliveras les requirió no utilizar su propiedad, porque según adujo, existía un plano del Departamento de la Vivienda y declaraciones de empleados del Centro de Recaudación de Impuesto Municipales (CRIM) que acreditaban su petitorio. Ante ese reclamo, el matrimonio Villanueva-Oliveras solicitó al matrimonio Pagán Oliveras que cesara su conducta y devolviera el dominio de la porción de la propiedad. Como remedio, solicita reivindicar la posesión de la totalidad de la propiedad, que se condene al matrimonio Pagán-Oliveras a pagar la cantidad de dos mil setecientos dólares ($2,700.00) por concepto de uso y disfrute de la porción de su propiedad desde hacía 27 meses, más cien mil dólares ($100,000.00) por daños y perjuicios y veinticinco mil dólares ($25,000.00) por concepto de honorarios de abogado.

De igual forma, el 18 de agosto de 2018, el matrimonio Pagán-Oliveras presentó la *Contestación a Demanda y Reconvención*[9]*,* donde negó y admitió algunas alegaciones, así como presentó las defensas de rigor e incluyeron una reconvención, en la cual alegó ser dueño de:

> Rústica: Parcela marcada con el número sesenta y ocho (68) del plano de parcelación de la comunidad rural pesas del Barrio Pesas del término municipal de Ciales, con una cabida de uno punto cero setecientas diecisiete cuerdas (1.0717 cdas.), equivalentes a cuatro mil doscientos doce puntos veintiún metros cuadrados (4,212.21 m.c.). En lindes por el norte con Calle Número 11 de la comunidad. Por el Sur, con una quebrada que separa de los terrenos de Pedro Mayoral y Francisco Serrano. Por el Este con parcela número 69 de la comunidad; y por el Oeste con la parcela número 67 de la comunidad[10].

Esbozó que una franja ubicada en el inmueble del matrimonio Villanueva-Oliveras le pertenece en pleno dominio a este. Alegaron que tanto la finca de este, como la del matrimonio Villanueva-

---

[9] Expediente original.
[10] Escritura catorce (14) otorgada el 10 de febrero de 2001 ante notario Vázquez Montes. Inscrita en el Folio 256 del Tomo 139 de Ciales, Finca Número 6,706 del Registro de la Propiedad, Sección de Manatí (Lote 68).

Oliveras le pertenecía originalmente al estado, y que en los planos de segregación y lotificación del Departamento de la Vivienda se consignaba que una franja de terreno denominada 62 A forma parte de su finca, y que el matrimonio Villanueva-Oliveras la ha poseído ilícitamente. Razonó que el plano de segregación y lotificación del Departamento de la Vivienda consignaba una nota marginal, la cual expresaba que la Parcela 62 A se agrupara en la Parcela 68 perteneciente a este, para darle acceso a una vía y así evitar quedar esa finca enclavada. Solicitaron al TPI que declarara nula la escritura otorgada por el matrimonio Villanueva-Oliveras porque no tomaron en consideración los planos de segregación y lotificación preparados previamente por el Departamento de la Vivienda. Alegaron que el CRIM pretendió cobrarles contribuciones por la estructura residencial propiedad del matrimonio Villanueva-Oliveras a base del plano del Departamento de la Vivienda. También, adujo que, trató de llegar a un acuerdo extrajudicial para disponer de la controversia, pero no hubo disposición de la otra parte. Por ello, reclamó la reivindicación del predio o franja de terreno ilegalmente poseído por el matrimonio Villanueva-Oliveras más veinticinco mil dólares ($25,000.00) por concepto de daños y las costas, gastos y una suma razonable de honorarios.

El 12 de septiembre de 2018, el matrimonio Villanueva-Oliveras presentó *Contestación a Contestación a Demanda y Reconvención.*

Luego de varias incidencias procesales innecesarias pormenorizar, el 8 de febrero de 2021, las partes presentaron el *Informe de Conferencia con Antelación a juicio*[11] y, el 3 de agosto de 2021, se celebró la conferencia con antelación a juicio. Según surge

---

[11] Expediente original.

de la *Minuta*[12] del 3 de agosto de 2021, se discutió una oferta transaccional, una posible enmienda del informe de conferencia solicitada por el matrimonio Pagán-Oliveras, la objeción a la misma por el matrimonio Villanueva-Oliveras y se señaló el juicio para el 6, 7, 8 y 9 de diciembre de 2021.

Antes de comenzar el juicio, las partes estipularon lo siguiente[13]:

1. El 7 de julio de 2000 los demandantes otorgaron la Escritura número 205 ante el notario Jose O San Miguel, para adquirir la finca 10106.
2. El 8 de septiembre de 1971 el Sr. Hermenegildo Otero Arvelo y su esposa Clotilde Vázquez Ramos adquirieron del ELA la titularidad de la parcela 62, que pasó a convertirse en la finca 6,245 del Registro de la Propiedad, Sección de Manatí.
3. Los demandados el 10 de febrero de 2001 otorgaron la Escritura número 14 para adquirir la finca 6,706, antigua parcela 68.
4. El 29 de abril de 1985 Hermenegildo Otero Arvelo y Clotilde Vázquez Ramos otorgaron la Escritura número 40 de Segregación, de la finca 6,245 creando la fina 10,106 de 529.5992 metros cuadrados.

Además, se marcó como prueba estipulada los siguientes exhibits:

I. Fotos de las parcelas en controversia tomadas el 29 de julio de 2019por el representante legal de la familia demandante.
II. Certificación de Propiedad Inmueble de la finca número 10,106 expedida el 19 de marzo de 2019.
III. Copia de la escritura número 205 de Compraventa otorgada por Aida Luz Vélez a favor de los demandantes ante el notario Jose Oscar San Miguel en Ciales, Puerto rico el día 7 de julio de 2000.
IV. Copia solicitud de cambio de dueño, exoneración contributiva y/o exención de veterano relativa a compraventa de Aida luz Vélez Maldonado a favor de demandantes.
V. Copia de Certificación de Valores Contributivos del 6 de julio de 2000 presentada por Aida L Vélez Maldonado en cuanto a parcela de la familia demandante.
VI. Escritura número 40 sobre Segregación otorgada por los esposos Hermenegildo Otero Alvelo y Clotilde Vázquez Ramos el 29 de abril de 1985.
VII. Escritura número 74 sobre Segregación y Compraventa otorgada por los esposos Hermenegildo Otero Alvelo y Clotilde Vázquez Ramos y ELA de PR el 8 de septiembre de 1971.

---

[12] Véase Expediente original del TPI. La oferta transaccional cursada, por el matrimonio Villanueva-Oliveras al matrimonio Pagán-Oliveras, a saber, la parte apelante debía pagar $5,000.00 por la servidumbre actual, y dos pies adicionales de ancho, a todo lo largo de la servidumbre. De desear una extensión adicional al camino, serían $2,000.00 por cada dos pies hasta un máximo de cinco pies.
[13] Véase Expediente original, Minuta del 6 de diciembre de 2021.

VIII. Escritura número 14 sobre Compraventa otorgada por los demandados-Reconvenientes el 10 de febrero de 2001.

IX. Certificación Registral del 23 de diciembre de 2015 de la finca 4,674 (Parcela #68).

X. Escritura 67 sobre Segregación y Compraventa otorgada el 8 de septiembre de 1971 por los esposos Teodoro Oliveras Rivera y Zoraida Serrano Miranda y el ELA de PR.

XI. Escritura número 87 sobre Segregación y Compraventa otorgada 8 de septiembre de 1971 por los esposos Adolfo Alvelo Rodríguez y Teresa García Padilla y el ELA de PR.

XII. Carta extrajudicial firmada por el Lcdo. Markos M. Baños Cabán dirigida a los demandados Bartolo Luis Pagán Rodríguez y Noemí Oliveraas Serrano con fecha del 17 de noviembre de 2015.

XIII. Carta extrajudicial firmada por la Lcda. María del C Ojeda Rodríguez al Lcdo. Markos M. Baños Cabán el 10 de febrero de 2016en respuesta a la carta de él del 17 de noviembre de 2015.

Igualmente, durante el juicio, se marcó la siguiente prueba estipulada[14]:

XIV. Escritura número 79 de Compraventa otorgada el 5 de junio de 1999.

XV. Plano preparado por el agrimensor Israel Otero Rosario.

Así también, cada una de las partes presentó su prueba documental, la cual fue admitida y marcada como exhibits, saber:

Parte apelante:
I. Plano del 18 de agosto de 1980.
II. Informe pericial del Agrim. Abiud Reyes Rivera.

Parte apelada:
I. Factura.
II. Informe del perito Ing. Carmelo Febles Valentín.
III. Plano

El 8 de diciembre de 2021,[15] durante la vista en su fondo, el TPI expresó que, a base de la prueba desfilada hasta ese día, el Tribunal tenía que resolver dos controversias, a saber, 1) *si la finca de don Bartolo y doña Noemí es una finca enclavada; y 2) si la parte del terreno que don Luis y Doña Olga reclaman como suyo, es de la titularidad de Don Bartolo y Doña Noemí.* Además, entendió que existía otra controversia, a saber: *si existe o no una franja de terreno entre las parcelas.* Surge de la Minuta que el foro apelado brindó oportunidad para la que las partes llegasen a una transacción.

---

[14] Véase Expediente original, Minuta 7 de diciembre de 2021.
[15] Véase Expediente original, Minuta 8 de diciembre de 2021.

Por otra parte, el 9 de diciembre de 2021[16], se marcó como Exhibit 3 del matrimonio Villanueva-Oliveras el plano. Posteriormente, el 28 de febrero de 2022[17], el juicio continuó y se marcó como Exhibit 2 del matrimonio Pagán-Oliveras el Informe Pericial del Ing. Rivera Reyes. Por último, el 1 de marzo de 2022[18], la señora Noemí Oliveras estaba anunciada como testigo y esta no compareció a la vista; a petición de la representación legal del matrimonio Villanueva-Oiveras, se solicitó al TPI que se aplicara la presunción de la prueba adversa según la Regla 304(5) de Evidencia[19].

El 4 de agosto de 2023, el foro apelado dictó la *Sentencia*[20], y realizó 18 determinaciones de hechos, a saber:

1. Los demandantes Luis Alberto Villanueva Ortiz y Olga Iris Oliveras Serrano están casados entre sí bajo el régimen de sociedad legal de bienes gananciales. (En adelante "los demandantes").

2. El 7 de julio de 2000, y ante el notario José Oscar San Miguel, los demandantes adquirieron mediante escritura pública número 205, la propiedad que se describe a continuación:

   Rústica: Localizada en el Barrio Pesas del término municipal de Ciales, Puerto Rico, con una cabida superficial de QUINIENTOS VEINTINUEVE PUNTO CINCO MIL NOVECIENTOS NOVENTA Y DOS METROS CUADRADOS (529.5992 m.c.) equivalentes a punto mil trescientos cuarenta y siete diezmilésimas de otra cuerda (.1347 c as.) y en lindes, por el Norte, en varias alineaciones que suman cincuenta y cinco punto seiscientos cincuenta metros line les (55.650) con franja de terreno dedicada a uso público que separa carretera municipal, por el Sur, en dos alineaciones que suman cincuenta y siete punto doscientos noventa y seis metros lineales (57.296) con Jorge San Miguel y Leodoro Oliveras, por el Este, en Una sola alineación de diecisiete punto ochocientos cuarenta y cinco metros lineales (17.845) con entrada vecina a la carretera número ciento cuarenta y nueve (149) y por el Oeste, en una sola alineación de cero punto ochocientos veintidós metros lineales (0.822) con Adolfo Arbelo.

   La descrita propiedad consta inscrita al folio ciento ochenta (180) vuelto del tomo doscientos catorce (214) de Ciales, finca número diez mil ciento seis (10,106) del Registro de la Propiedad, Sección de Manatí.

[16] Véase Expediente original, Minuta 9 de diciembre de 2021
[17] Véase Expediente original, Minuta 28 de febrero de 2022.
[18] Véase Expediente original, Minuta 1 de marzo de 2022.
[19] 32 LPRA Ap. VI, R. 304(5).
[20] Apéndice 2 de la apelación.

Se segrega de la finca 6245 de Ciales.

3. En el momento que se otorga la escritura de compraventa, la propiedad estaba ya inscrita en el Registro de la Propiedad, según la descripción antes mencionada. Finca número 10, 106 del Registro de la Propiedad de Manatí. Los demandantes son el cuarto dueño de la propiedad desde que se concedió el título de propiedad sobre la misma. Los demandantes inscribieron su título en el Registro de la Propiedad.

4. Los demandados, Bartolo Pagán Rodríguez y Noemí Oliveras Serrano, están casados entre sí bajo el régimen de sociedad legal de bienes gananciales. (En adelante "los demandados").

5. Los demandados son los dueños de la propiedad que se describe a continuación:

Rústica: Parcela marcada con el número sesenta y ocho (68) del plano de parcelación de la comunidad rural pesas del Barrio Pesas del término municipal de Ciales, con una cabida de uno punto cero setecientas diecisiete cuerdas (l .0717 cdas.), equivalentes a cuatro mil doscientos doce puntos veintiún metros cuadrados (4,212.21 m.c.). En lindes por el norte con Calle Número 1 1 de la comunidad. Por el Sur, con una quebrada que separa de los terrenos de Pedro Mayoral y Francisco Serrano. Por el Este con parcela número 69 de la comunidad; y por el Oeste con parcela número 67 de la comunidad.

6. La propiedad que antecede se encuentra inscrita en el Registro de la Propiedad. Número de finca 6,706 del Registro de la Propiedad de Manatí.

7. Señalan los demandados que las constancias de Registro de la Propiedad no son correctas en cuanto a la finca 1O, 106.

8. La parte demandada utiliza una franja de terreno que los demandantes reclaman que les pertenece. Dicha franja es utilizada por los demandados para salir y entrar a su finca. Sin embargo, éstos últimos reclaman que dicha franja les pertenece a ellos.

9. Los demandados indican que la descripción registral de las fincas en controversia está errónea ya que dichas fincas fueron inscritas utilizando Unos planos del Departamento de la Vivienda que no tomaron en consideración otros planos previamente preparados por dicho Departamento de la Vivienda.

10. Indican los demandados que si se considerara los planos originalmente preparados por el Departamento de la Vivienda la descripción de los solares sería diferente y reflejaría que la franja de terreno en controversia pertenecería los demandados y no a los demandantes.

11. Además, indica la demandada que el efecto de no considerar los planos de segregación originalmente preparados por el Departamento de la Vivienda fue que la finca de los demandados quedaría enclavada y no contaría con acceso a una vía pública.

12. Tanto los demandados como los demandantes adquirieron sus respectivas fincas con posterioridad a la inscripción de ambas fincas en el registro de la propiedad.

13. De conformidad a las descripciones de las fincas de las partes, entre ambas fincas discurre un camino vecinal identificado como Calle 11 de la comunidad. De conformidad al testimonio vertido por el perito de la parte demandante, dicho camino era contemplado para darle salida a los solares ubicados en la parte Sur del mismo, el que incluye la finca del demandado.

14. El camino identificado en la parte Sur de la finca del demandante y al Norte de la parte demandada nunca se construyó. Los propietarios colindantes en la parte Este de la finca del demandado, eventualmente ocuparon la franja identificada como Calle 11, dejando la finca del demandado sin acceso a salida a camino público.

15. Al cabo de varios años de que los demandados adquirieran la finca comenzaron a construir una propiedad. Para lograr acceder a la misma solicitan al demandante autorización para pasar por su finca y poder entrar y salir la misma mientras se lleva a cabo la construcción.

16. El perito de los demandantes, Ing. Carmelo Febles Valentín, manifestó que el camino utilizado por los demandados que transcurre por el predio de terreno reclamado por ambas partes afecta la construcción del pozo séptico de la propiedad de los demandantes.

17. La parte demandada reconoció que la condiciones que éste reclama sobre su propiedad que es una finca enclavada no fueron provocadas por el demandante. Acepta, además, que las descripciones de la finca del demandante son las que obran en el Registro de la Propiedad.

18. La única contención de los demandados para reclamar el predio de terreno en controversia es que el plano utilizado por el Departamento de la Vivienda para otorgar los títulos de propiedad fue uno incorrecto, que a su vez generó el nacimiento de, una finca con una cabida y con linderos incompatibles con dicho plano.

19. Aunque los demandados reconvenientes reclaman que de noreconocerse la titularidad de la franja de terreno en controversia quedarían como finca enclavada, éstos no incluyeron en su demanda a todos sus colindantes.

El TPI concluyó que, (1) *los esposos Villanueva Oliveras adquirieron la finca 10, 106 descansando en las constancias que ofrece el Registro de la Propiedad. Surge que estos son terceros civiles, que de buena fe y a título oneroso adquirieron de la Sra. Aida Luz Vélez Maldonado la finca 10, 106, la cual según la descripción registral de la misma tiene una cabida de 529.5992 m/c. El negocio jurídico habido entre la señora Vélez y los demandantes goza de*

*validez y aun cuando los demandados alegaron la nulidad del mismo, entendemos que estamos ante un negocio perfectamente válido, en el cual concurren todos los requisitos indispensables para su validez. En virtud de tal negocio jurídico, los demandantes adquirieron un derecho real inscrito de quien en el Registro aparecía cómo dueño, y tenía facultad para transmitir,* (**2) _estamos conscientes. que la franja de terreno que aquí se ordena su devolución es el acceso que utiliza la parte demandada para accesar a su finca, por lo que con lo que aquí resolvemos estaríamos eliminando tal acceso, convirtiéndola en una finca enclavada, sin embargo, no estamos en posición de determinar sobre cual finca deberá constituirse la servidumbre de paso para que el demandado pueda accesar a su propiedad_**[21].

Además, declaró *No Ha Lugar* la reconvención y luego de realizar el ajuste al valor presente de las cuantías concedidas, concedió tres mil quinientos dólares ($3,500.00) como compensación por los daños sufridos más dos mil setecientos dólares ($2,700.00) por concepto de la pérdida de uso de la propiedad. Ordenó al matrimonio Pagán-Oliveras a pagar seis mil doscientos dólares ($6,200.00) por honorarios de abogados, y a hacer entrega de la franja de terreno perteneciente a los demandantes.

El 14 de agosto de 2023, el matrimonio Villanueva-Oliveras presentó *Moción Certificada Bajo Firma de Representación Legal Solicitando Costas, Gastos y Honorarios de Abogado a Favor de la Parte Demandante Al Amparo de la Regla 44.2 y 35.1 de*

---

[21] Primeramente, en el presente pleito no son partes los demás colindantes de la finca perteneciente a los demandados además de que no existe prueba en el expediente sobre cuál sería la justa compensación que deberá recibir el predio dominante por la constitución de tal servidumbre. En segundo lugar, según la prueba desfilada, existía otra franja de terreno que daría acceso a la finca de los demandados, sin embargo, los colindantes de dicha "Calle 1 1" ocuparon tal predio de terreno, imposibilitando el que los demandados accesaran a su propiedad por medio tal franja de terreno.

*Procedimiento Civil*[22], en la cual le solicitan al TPI tres mil noventa y cuatro dólares con setenta centavos ($3,094.70) por concepto de costas y gastos necesarios y entre cuarenta mil ($40,000.00) a treinta y seis mil seiscientos ochenta y tres dólares ($36,683.00) por concepto de honorarios de abogados. El 21 de agosto de 2023, el matrimonio Pagán-Oliveras presentó *Moción En Solicitud de Reconsideración, Enmiendas a Ciertas Determinaciones de Hechos y Determinaciones Adicionales de Hecho y Conclusión de Derecho*[23] , el 3 de octubre de 2023, fue declarada *No Ha Lugar* por el TPI. Ese mismo día, el foro apelado declaró con lugar el memorando de costas y ordenó al matrimonio Pagán-Oliveras a pagar los tres mil noventa y cuatro dólares con setenta centavos ($3,094.70) y declaró *No Ha Lugar* los honorarios de abogados.

Inconforme, el 3 de noviembre de 2023, el matrimonio Pagán-Oliveras presentó la *Apelación* y el *Certiorari* ante nuestra consideración. En su escrito de Apelación, señaló los siguientes errores:

1. ERRÓ EL TPI AL DECLARAR CON LUGAR LA DEMANDA SOBRE REIVINDICACIÓN DE LOS DEMANDANTES [AUN] CUANDO EL PLANO DE PARCELACIÓN DEL DEPARTAMENTO DE LA VIVIENDA DE 1980 SURGE CON MERIDIANA CLARIDAD QUE LA FRANJA DE TERRENO QUE UTILIZAN LOS APELANTES COMO ACCESO A SU PROPIEDAD LES PERTENECE A ÉSTOS ÚLTIMOS.

2. ERRÓ EL TPI AL DECLARAR CON LUGAR LA DEMANDA SOBRE REIVINDICACIÓN DE LOS DEMANDANTES [AUN] CUANDO DE LA DESCRIPCIÓN REGISTRAL DE LA PARCELA NÚMERO 68 QUE OBRA INSCRITA EN EL REGISTRO DE LA PROPIEDAD DESDE EL 15 DE AGOSTO DE 1974 Y DE SU INSCRIPCIÓN SURGE CON MERIDIANA CLARIDAD QUE SU COLINDANCIA NORTE ES LA CALLE 11 DE LA COMUNIDAD.

3. ERRÓ EL TPI AL CONCLUIR QUE ES DE APLICACIÓN LA FIGURA JURÍDICA DEL TERCERO REGISTRAL [AUN] CUANDO EL DERECHO REAL DE LOS APELANTES CONSTA INSCRITO DESDE EL 1974 CONFORME LA DESCRIPCIÓN REGISTRAL DE LA FINCA NÚMERO (6,706) (PARCELA #68) LA CUAL ESTABLECE CON MERIDIANA CLARIDAD QUE LA

---

[22] 32 LPRA Ap. V, R. 44.2 y R. 35.1.
[23] Apéndice 3 de la apelación.

COLINDANCIA NORTE DE ÉSTA SE EXTIENDE HASTA LA CALLE 11 DE LA COMUNIDAD.

4. ERRÓ EL TPI AL CONCLUIR QUE ERA DE APLICACIÓN LA FIGURA DEL TERCERO REGISTRAL CUANDO SURGE DE LA PRUEBA DESFILADA QUE LOS APELADOS CONOCÍAN LA CONFIGURACIÓN DE LAS PARCELAS Y POR CONSIGUIENTE, CONOCÍAN DE LA INEXACTITUD DE LAS CONSTANCIAS DEL REGISTRO POR LO QUE NO PUEDEN SER CONSIDERADOS ADQUIRENTES DE BUENA FE.

5. ERRÓ EL TPI AL CONCLUIR QUE NO ESTÁ EN POSICIÓN DE DETERMINAR SOBRE CUÁL FINCA DEBERÁ CONSTITUIRSE LA SERVIDUMBRE DE PASO PARA QUE EL DEMANDADO PUEDA [TENER ACCESO] A SU PROPIEDAD POR NO SER PARTE EN EL PLEITO LOS DEMÁS COLINDANTES DE LA FINCA DE LOS DEMANDADOS Y POR NO EXISTIR PRUEBA EN EL EXPEDIENTE SOBRE CUAL SERÍA LA JUSTA COMPENSACIÓN QUE DEBERÍA RECIBIR EL PREDIO DOMINANTE POR LA CONSTITUCIÓN DE TAL SERVIDUMBRE.

6. ERRÓ EL TPI AL DETERMINAR QUE NO ESTÁ EN POSICIÓN DE DETERMINAR SOBRE CUÁL FINCA DEBERÁ CONSTITUIRSE LA SERVIDUMBRE DE PASO PARA QUE EL DEMANDADO PUEDA [TENER ACCESO] A SU PROPIEDAD POR NO SER PARTE LOS DEMÁS COLINDANTES DE LA FINCA DE LOS DEMANDADOS APELANTES Y A LA MISMA VEZ DETERMINAR QUE "SEGÚN LA PRUEBA DESFILADA EXISTÍA OTRA FRANJA DE TERRENO QUE DARÍA ACCESO A LA FINCA DE LOS DEMANDADOS, SIN EMBARGO, LOS COLINDANTES DE DICHA CALLE 11 OCUPARON EL PREDIO DE TERRENO IMPOSIBILITANDO EL QUE LOS DEMANDADOS [TUVIESEN ACCESO] A SU PROPIEDAD POR MEDIO [DE] TAL FRANJA DE TERRENO".

7. ERRÓ EL TPI AL CONCEDER UNA PARTIDA DE $2,700.00 POR PRIVACIÓN DEL DISFRUTE DEL PREDIO ALEGADAMENTE APROPIADO SIN ESTABLECER DETERMINACIÓN DE HECHO ALGUNA PARA JUSTIFICAR TAL CONCESIÓN MÁS ALLÁ DE ESTABLECER MERAMENTE QUE LA PARTE DEMANDANTE ASÍ LO HABÍA SOLICITADO Y QUE, ANTE EL HECHO DE QUE ESA FUE SU SOLICITUD, EL TRIBUNAL ENTENDÍA PRUDENTE CONCEDER LO SOLICITADO.

8. ERRÓ EL TPI AL CONCEDER UNA PARTIDA DE $3,500.00 POR [sic] COMPENSACIÓN POR LOS DAÑOS SUFRIDOS SIN ESTABLECER DETERMINACIÓN DE HECHO ALGUNA PARA CONCEDER TAL CONCESIÓN.

Por otro lado, en el recurso de *Certiorari,* se imputan como errores los siguientes:

1. ERRÓ EL TPI AL DECLARAR CON LUGAR LA "MOCIÓN CERTIFICADA BAJO FIRMA DE REPRESENTACIÓN LEGAL SOLICITANDO COSTAS, GASTOS Y HONORARIOS DE ABOGADO A FAVOR DE LA PARTE DEMANDANTE AL AMPARO DE LA REGLA 44.2 Y 35.1 DE PROCEDIMIENTO CIVIL" PRESENTADA POR LOS

DEMANDANTES, [AUN] CUANDO LA COPIA DE ÉSTA QUE FUE NOTIFICADA A LOS DEMANDADOS NO ESTABA FIRMADA A PUÑO Y LETRA POR EL ABOGADO DE LOS DEMANDANTES Y TAMPOCO ESTABA JURAMENTADA POR LOS DEMANDANTES.

2. ERRÓ EL TPI AL DECLARAR CON LUGAR LA "MOCIÓN CERTIFICADA BAJO FIRMA DE REPRESENTACIÓN LEGAL SOLICITANDO COSTAS, GASTOS Y HONORARIOS DE ABOGADO A FAVOR DE LA PARTE DEMANDANTE AL AMPARO DE LA REGLA 44.2 Y 35.1 DE PROCEDIMIENTO CIVIL" PRESENTADA POR LOS DEMANDANTES, [AUN] CUANDO NO SE ACOMPAÑÓ A LA COPIA DE ÉSTA QUE FUE NOTIFICADA A LOS DEMANDADOS NINGUNO DE LOS ANEJOS QUE SE ACOMPAÑARON AL ESCRITO ORIGINAL QUE FUE PRESENTADO AL TRIBUNAL.

3. ERRÓ EL TPI AL DECLARAR CON LUGAR LA MOCIÓN CERTIFICADA BAJO FIRMA DE REPRESENTACIÓN LEGAL SOLICITANDO COSTAS, GASTOS Y HONORARIOS DE ABOGADO A FAVOR DE LA PARTE DEMANDANTE AL AMPARO DE LA REGLA 44.2 Y 35.1 DE PROCEDIMIENTO CIVIL PRESENTADA POR LOS DEMANDANTES, [AUN] CUANDO DICHA MOCIÓN NO CUMPLÍA CON LOS REQUISITOS ESTABLECIDOS EN LA REGLA 44.1 DE PROCEDIMIENTO CIVIL DE PUERTO RICO, TODA VEZ QUE AL NO ESTAR FIRMADA POR EL ABOGADO DE LOS DEMANDANTES LA COPIA DE ÉSTA NOTIFICADA A LOS DEMANDADOS, NI ESTAR JURAMENTADA POR LOS DEMANDANTES NI HABERSE ACOMPAÑADO COPIA DE LOS ANEJOS QUE FUERON PRESENTADOS CON EL ESCRITO ORIGINAL AL TRIBUNAL DENTRO DEL TÉRMINO JURISDICCIONAL DE [DIEZ] (10) DÍAS CONTADOS A PARTIR DE LA FECHA DE LA NOTIFICACIÓN DE LA SENTENCIA, DICHA NOTIFICACIÓN FUE UNA DEFECTUOSA QUE NUNCA SE PERFECCIONÓ, PRIVANDO AL TPI DE JURISDICCIÓN Y AUTORIDAD PARA ACTUAR SOBRE ÉSTA.

El 7 de noviembre de 2023, este Tribunal emitió una Resolución consolidando los casos de epígrafe y disponiendo que "[l]as partes deben tener presente que el cumplimiento con los términos reglamentarios no está sujeto a las notificaciones de las determinaciones interlocutorias del Tribunal de Apelaciones". (Énfasis en la original). Ese mismo día, le concedimos a la parte Apelante un término de diez (10) días para que informara el método de reproducción de la prueba oral. El 13 de noviembre de 2023, la parte Apelante solicitó que le autorizáramos la reproducción de la prueba oral mediante exposición narrativa estipulada.

El 28 de noviembre de 2023, este Tribunal le autorizó la presentación de una exposición narrativa estipulada y le concedió al Apelante un primer término de treinta (30) días para presentar la exposición narrativa. El 29 de noviembre de 2023, el Apelante solicitó una prórroga de treinta (30) días para presentar la exposición narrativa. Posteriormente, el 29 de diciembre de 2023, el Apelante solicitó un término final de treinta (30) días para presentar la exposición narrativa. En consecuencia, el 17 de enero de 2024, este Tribunal le concedió un "término final de diez (10) días para presentar la exposición narrativa estipulada". (Énfasis en la original).

Entre nuestra Resolución de 17 de enero de 2024 y el 6 de junio de 2024, no hubo movimiento en el caso. La parte Apelante no presentó la exposición narrativa estipulada ni solicitó prórrogas adicionales. Tampoco presentó excusas por la falta de diligencia y su dejadez en el caso.

Así las cosas, el 6 de junio de 2024, este Tribunal prescindió de la exposición narrativa estipulada, conforme la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones[24], y ordenó que la parte Apelada presentara su alegato en oposición. No fue hasta el 24 de junio de 2024, que la parte Apelante finalmente compareció y nos solicitó que aceptáramos la exposición narrativa no estipulada, esto es, ciento cincuentainueve (159) días después de que culminó el término dispuesto por este Tribunal para hacerlo. El 8 de julio de 2024, la parte Apelada presentó su *Oposición Consolidada a la Apelación y Certiorari y Oposición a la Moción de Reconsideración.*

Tras varios trámites procesales, incluyendo la imposibilidad de las partes presentar una exposición narrativa de la prueba

---

[24] 4 LPRA Ap. XXII-B, R. 7 (B) (5).

estipulada, el 5 de diciembre de 2024, este Tribunal ordenó la elevación de los autos originales del caso.

Con la comparecencia de las partes y con el beneficio de los autos originales, nos encontramos en posición para discutir el derecho aplicable.

**II.**

**-A-**

En *Rolón Adorno v. Registrador*[25], nuestro Tribunal Supremo reiteró lo siguiente:

> Como parte de su función, el Registrador ostenta la facultad de calificar los documentos que se presenten en el Registro de la Propiedad. La calificación consiste en el examen o la comprobación de la legalidad del título que pretende su inscripción en el Registro. L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3ra ed., San Juan, Eds. Jurídica, 2012, pág. 275. Esa facultad está anclada al principio de legalidad con el propósito de que solo tengan acceso al Registro de la Propiedad los títulos válidos y perfectos. *United Surety v. Registradora*, 192 DPR 187, 201 (2015). Se consideran títulos válidos y perfectos los que reúnen en sí los requisitos establecidos por ley o reglamento. *Western Fed. Savs. Bank v. Registrador*, 139 DPR 328, 332–333 (1995). Todo ello en cumplimiento con uno de los principios esenciales que reviste al Registro de la Propiedad: la fe pública registral. Del mismo modo, evita que el Registro se convierta en un mero archivo de documentos. Rivera Rivera, *op. cit.*, pág. 274. A esos efectos, los Registradores de la Propiedad tienen la obligación legal de determinar si un documento es o no inscribible. *United Surety v. Registradora*, supra; *R & G Premier Bank P.R. v. Registradora*, 158 DPR 241, 246 (2002).
>
> En armonía con el principio de legalidad, el Art. 229 de la Ley del Registro de la Propiedad Inmobiliaria de Puerto Rico (Ley Hipotecaria), 30 LPRA sec. 6381, preceptúa las limitaciones que tiene el Registrador en su función calificadora. Particularmente, ese estatuto le impone al Registrador diferentes grados de calificación cuando tiene[26] ante sí títulos inscribibles, ya sean notariales, judiciales o administrativos. ́Id. Como resultado de esto, la calificación variará dependiendo del documento que se presente para su inmatriculación. *Rigores v. Registrador*, 165 DPR 710, 721 (2005). **En cuanto a los documentos notariales, el rol calificador del Registrador se limitará a: (1) las formas extrínsecas de los documentos presentados; (2) la capacidad de los otorgantes; (3) la validez de los actos y contratos contenidos en tales documentos, y (4) la inexistencia de obstáculos que surjan del Registro de la Propiedad que impidan la inscripción de los documentos**. *R & G Premier Bank P.R. v. Registradora*, supra, pág. 247. (Énfasis nuestro).

---

[25] 207 DPR, 361, (2021).
[26] *Íd.*, 371.

**-B-**

La figura del tercero registral se ha definido del siguiente modo:

> El tercer adquirente, por negocio jurídico, de un derecho real inmobiliario inscrito, que en función de Registro inexacto es mantenido en su adquisición por la fe pública registral, siempre que concurran las demás circunstancias exigidas por la ley para tal protección[27].

Al presente, la figura del tercero registral está reconocida en nuestro derecho por vía del Artículo 35 de la Ley Núm. 210-2015, según enmendada, conocida como la "Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico". La precitada disposición reza:

> El asiento de inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos.

No obstante, el derecho real de un tercero estará protegido por la fe pública registral y será mantenido en su adquisición cuando cumpla con los siguientes requisitos:

> 1. El derecho es adquirido válidamente y con arreglo a la ley en un negocio intervivos, de buena fe y a título oneroso de persona que en el Registro aparece con facultad para transmitirlo, y que ha sido inscrito.
>
> 2. La adquisición se efectúa basado en un Registro inexacto por causas que no resultan clara y expresamente del propio Registro o por existir sobre la finca acciones o títulos de dominio o de otros derechos reales que no están debidamente inscritos.
>
> Ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en esta Ley, que se refieran a cargas y gravámenes o a derechos que no sean del que transfiere o grava, además del asiento que pública el derecho del transmitente.
>
> La buena fe del tercero se presume siempre que haya actuado con una mínima dosis de diligencia y mientras no se pruebe que al adquirir conocía la falta de exactitud del Registro.
>
> El adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes.
>
> Los derechos meramente mencionados o la indebida constancia de obligaciones no afectarán a tercero[28].

---

[27] R.M. Roca Sastre, II <u>Derecho hipotecario</u> 299, 304 (8va ed. Bosch 1995).
[28] 30 LPRA sec. 6050.

El tercero registral es aquel sujeto protegido por la publicidad del Registro de la Propiedad en las situaciones en que sus constancias puedan ser inexactas, lo que puede producir conflictos de titularidad entre la realidad registral y la extraregistral[29]. La tercería registral y sus consecuencias siempre presuponen la existencia de una inexactitud registral, pero esta ha de ceder a la necesidad de proteger la confianza depositada en las constancias del Registro por quien obró de buena fe a base de su contenido[30]. Después de todo, esa es la función del más importante instrumento de control de la actividad económica que afecta a los inmuebles sitos en el país.

Ahora bien, a tenor con la doctrina y la jurisprudencia puertorriqueña, para que se active la protección del tercero registral, el titular afectado debe demostrar que reúne todos los requisitos siguientes: (1) ser tercero civil adquirente, (2) de un derecho real; (3) mediante un negocio jurídico inter vivos válido; (4) a título oneroso; (5) de quien en el Registro tenga por lo menos su derecho presentado; (6) sin que del Registro surja expresamente información o datos relativos a la inexactitud registral; (7) como tenedor de buena fe en el momento de la adquisición y; (8) cuyo derecho consta inscrito, a su vez, en el Registro, requisito este último propio del derecho patrio[31].

Para constatar la concurrencia de todos estos requisitos, el foro de primera instancia tiene que recibir y dirimir la prueba que presenten los involucrados en el conflicto, con el fin de resolver cuál de las dos realidades debe prevalecer, la ficción registral o la realidad extrarregistral[32].

---

[29] *Banco de Santander v. Rosario Cirino*, 126 DPR 591, 609 (1990).
[30] *Consejo v. Villa Edamorga*, 161 DPR 785, 798 (2004).
[31] *Banco de Santander v. Rosario Cirino*, *supra*, págs. 603-604; *véase, además*, L.R. Rivera Rivera, <u>Derecho Registral Inmobiliario Puertorriqueño</u>, 2da ed., Jurídica Editores 2002, págs. 104-123.
[32] *Banco de Santander v. Rosario Cirino, supra*, pág. 618; *Consejo Titulares Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 559-560 (1991).

Amerita señalar, además, que nuestro ordenamiento también reconoce una presunción de buena fe del adquirente siempre que haya actuado con una mínima dosis de diligencia y "mientras no se pruebe que al adquirir conocía la falta de exactitud del Registro", presunción que puede y debe ser rebatida por quien cuestiona la tercería registral[33]. Así, el requisito de la buena fe en materia registral se ha definido como el "desconocimiento por el tercer adquirente, en el momento de la adquisición, de la inexactitud registral y de los vicios que pueden anular, rescindir, resolver o revocar la titularidad del transferente"[34].

La jurisprudencia puertorriqueña exige también un grado de diligencia razonable a quien reclama la protección de sus derechos, con el objetivo de detectar cualquier defecto en el título de quien le transmite el derecho, es decir, para descubrir cualquier "inexactitud" en las constancias del Registro que pueda afectar su titularidad. Dicho de otro modo, además de la falta de conocimiento del defecto que produce la nulidad o la revocación del título de su transferente, el tercero no puede haber tenido medios racionales o motivos suficientes para conocerlo[35].

Para precisar lo dicho, el Artículo 211 de la Ley Núm. 210-2015, *supra,* define como inexactitud del Registro "todo desacuerdo que en orden a los derechos inscribibles exista entre aquél y la realidad jurídica extraregistral"[36]. Así, el Registro es inexacto:

1.  Cuando el derecho existe en la realidad jurídica extraregistral al momento de la adquisición del tercero, pero:
    a) al inscribir se ha incurrido en error de expresión en el asunto;
    b) no ha llegado a inscribirse;
    c) fue inscrito, pero su asiento ha sido cancelado.

---

[33] *Véase*, 30 LPRA sec. 6050; *Roig Com. Bank v. Rosario Cirino, supra*, pág. 617; Roca Sastre, *op. cit.*, pág. 408.
[34] *Mundo v. Fuster, supra*, pág. 376.
[35] *Banco de Santander v. Rosario Cirino, supra*, págs. 605-607; *Mundo v. Fuster, supra*, pág. 376.
[36] 30 LPRA sec. 6351.

2. Cuando el derecho consta inscrito, pero no existía en la realidad jurídica extraregistral al momento de verificarse la adquisición del tercero:
a) no ha existido nunca el derecho por falsedad, nulidad u otro defecto del título inscrito;
b) existió, pero al momento de la adquisición ya se había extinguido por haber operado la anulación, resolución, rescisión, revocación, caducidad, renuncia, prescripción, liberación, expropiación, confiscación, etc.;
c) existía al momento de la adquisición, pero estaba amenazado de extinción por causa de anulabilidad o de resolución, rescisión o revocación sin contar explícitamente en el Registro[37].

Como vemos, la nulidad del negocio que produjo una primera inscripción puede crear inexactitud en las constancias del Registro, pues estas hacen ver como válido un negocio que no lo es. Ahora bien, el conocimiento de la inexactitud registral que tuvieran los transferentes o titulares anteriores no priva al tercero adquirente de su buena fe si él desconoce esa inexactitud al momento de la adquisición. Aún más, "el tercero recibe la protección de la buena fe registral, aun cuando se invalide el título del transferente, siempre que las causas de nulidad no surjan expresamente del registro"[38].

Recordemos que "[l]a buena fe es requisito que solo debe concurrir en el *tercer adquirente*; en cuanto al *transferente* es irrelevante su buena o mala fe. [...] La buena o mala fe del transferente *no influye* en el tercer adquirente"[39].

**-C-**

Una de las acciones protectoras del dominio es la acción reivindicatoria[40]. Mediante esta el dueño reclama la cosa de quien la tenga o posea[41] y solicita, además, su entrega cuando esta se halle en posesión de un tercero sin título alguno sobre la misma[42]. Para prevalecer, el promovente tiene que satisfacer los siguientes

---

[37] Rivera Rivera, *op. cit.*, págs. 100-101.
[38] *Delgado v. Rivera*, 173 DPR 150, 169 (2008).
[39] Roca Sastre, *op. cit.*, pág. 371.
[40] 31 LPRA sec. 1111.
[41] *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142, 157 (2006).
[42] J. Puig Brutau, Fundamentos de Derecho Civil, 4ta ed., Barcelona, Ed. Bosch, 1994, Tomo III, Vol. 1, pág. 162.

requisitos, a saber: "[...] identificar adecuadamente [el] objeto, probar que es suyo, y probar que está indebidamente en posesión del demandado"[43]. Particularmente, la identificación "[...] consiste [en] demostrar que la finca que reclama es la misma a que se refieren los documentos que dicha parte presente en evidencia para acreditar su justo título de dominio"[44]. Por tal razón, debe "[...] fijarse con precisión la situación, cabida y linderos del inmueble a reivindicarse, y demostrarse durante el juicio que el predio reclamado es aquel a que se refieren los documentos, títulos y demás medios de prueba en que el actor funde su pretensión"[45]. De lo anterior se desprende que el objeto de la reivindicación no es recobrar cualquier cantidad de terreno sino una cantidad específica y determinada[46]. Cumplida esta obligación probatoria, corresponde al demandado señalar y probar su mejor título[47] y no puede basarse únicamente en los vicios que tenga el título del adversario[48].

### -D-

El derecho real de servidumbre es definido por el Art. 465 del Código Civil "como un gravamen impuesto sobre un bien inmueble, denominado predio sirviente, a beneficio de otro perteneciente a un dueño distinto, denominado predio dominante"[49]. Las servidumbres, como principio general, son inseparables de la finca a la que activa o pasivamente pertenecen[50]. De otra parte, las servidumbres pueden adquirirse (1) por ley, (2) por título, (3) por prescripción, o (4) por signo aparente[51].

---

[43] *Ramírez Quiñones v. Soto Padilla, supra*, pág. 157; véase, además, *Pérez Cruz v. Fernández*, 101 DPR 365, 374 (1973).
[44] *Pérez Cruz v. Fernández, supra.*
[45] *Íd.* De lo anterior es razonable concluir que en este tipo de pleito los planos constituyen, por lo menos, parte de la evidencia que puede utilizar un tribunal para restablecer a su verdadera situación los límites de diversos fundos. *Castrillo v. Maldonado*, 95 DPR 885, 891 (1968).
[46] *Castrillo v. Maldonado, supra.*
[47] *Ramírez Quiñones v. Soto Padilla, supra.*
[48] *Ramírez Quiñones v. Soto Padilla, supra*, pág. 157.
[49] 31 LPRA sec. 1631; *Ciudad Real v. Municipio de Vega Baja*, 161 DPR 160, 171 (2004).
[50] Artículo 470 del Código Civil, 31 LPRA sec. 1636.
[51] Artículos 473 a 478 del Código Civil, 31 LPRA secs. 1651 a 1656.

A su vez, el Código Civil clasifica las servidumbres según su naturaleza o características. Así, las servidumbres son legales o voluntarias, según las establezca la ley o la voluntad de los propietarios de los predios involucrados[52]. Las servidumbres pueden establecerse "en provecho de una o más personas o de una comunidad a quienes no le pertenezca la finca gravada"[53]. Otra característica de las servidumbres la establece el Art. 471 del Código Civil, de la siguiente manera:

> Las servidumbres son indivisibles. Si el predio sirviente se divide entre dos o más, la servidumbre no se modifica y cada uno de ellos tiene que tolerarla en la parte que le corresponda.
>
> Si es el predio dominante el que se divide entre dos o más, cada porcionero puede usar por entero de la servidumbre, no alterando el lugar de su uso, ni gravándola de otra manera[54].

De otro lado, el Artículo 467 del Código Civil distingue que las servidumbres que afectan a las tierras pueden ser divididas en dos clases: personales y reales[55]. En cuanto a las reales, también llamadas prediales, son aquellas que disfruta el propietario de una finca, constituidas sobre otra propiedad vecina para beneficio de aquella. Se llaman así porque, estableciéndose para beneficio de una propiedad, las obligaciones que la constituyen se prestan respecto de dicha propiedad y no respecto de la persona que sea su dueño[56].

Uno de los tipos de servidumbres prediales lo constituyen las servidumbres de paso y estaban regidas en nuestro ordenamiento por los Artículos 500 a 506 del Código Civil[57]. Específicamente, el Artículo 500 define la servidumbre de paso como el derecho que tiene un propietario de exigir que se le permita el paso por las propiedades vecinas cuando su finca o heredad se encuentra enclavada entre otras ajenas y sin salida a camino público, previa la

---

[52] Art. 472 del Código Civil, 31 LPRA sec. 1638; *Ciudad Real v. Municipio de Vega Baja*, 161 DPR, a las págs. 171-172.
[53] Art. 466 del Código Civil, 31 LPRA sec. 1632.
[54] 31 LPRA sec. 1637. Como antes indicamos, se refiere al Código Civil derogado.
[55] 31 LPRA sec. 1633.
[56] *Íd.*
[57] 31 LPRA secs. 1731 a la 1737.

correspondiente indemnización[58]. En cuanto a su ejercicio, **las servidumbres de paso son de naturaleza discontinua, ya que se utilizan invariablemente a intervalos más o menos largos de tiempo y dependen de los actos del hombre para su aprovechamiento**[59]. Debido a esta naturaleza discontinua, como regla general, la servidumbre de paso sólo puede adquirirse mediante título[60].

Ahora bien, también se ha sostenido que las servidumbres de paso pueden ser aparentes o no aparentes, y esa distinción depende de si se anuncian, o no, mediante la presentación de un signo exterior que revele su existencia y uso o aprovechamiento[61]. En cuanto a las servidumbres aparentes, éstas se pueden constituir por el dueño de una o varias fincas. En lo pertinente, el Art. 477 del Código Civil, dispone lo siguiente:

> La existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas se considerará, si se enajenare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo de separarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura[62].

Es decir, el "signo aparente" de una servidumbre de paso puede constituir "el título" necesario para exigir su continuidad y utilización, si se cumplen los requisitos establecidos en el antedicho Art. 477: (1) la existencia del signo aparente de servidumbre entre dos fincas; (2) que el signo aparente de servidumbre lo haya constituido el dueño de ambas fincas; (3) que una de las fincas se enajene a un tercero; y (4) que no se haya hecho desaparecer el signo aparente de servidumbre antes del otorgamiento de la escritura de enajenación, o que no se haya hecho una manifestación contraria a

---

[58] 31 LPRA sec. 1731.
[59] Art. 468 del Código Civil, 31 LPRA sec. 1634. (Énfasis suplido).
[60] Art. 475 del Código Civil, 31 LPRA sec. 1653.
[61] *Soc. de Gananciales v. Mun. de Aguada*, 144 DPR 114, 123 (1997).
[62] 31 LPRA sec. 1655.

la subsistencia del signo en el título de enajenación de cualquiera de las fincas[63]. En cuanto al primer requisito, el Tribunal Supremo ha expresado que un signo aparente es "la exteriorización o expresión manifiesta de un hecho visible que revela una relación de servicio en un determinado aspecto entre dos fincas, y el cual es establecido por el dueño de ambas"[64]. Es decir, las servidumbres de paso no se presumen, por lo que hay que probar su constitución. Así pues, como la servidumbre de paso constituye un serio gravamen sobre el predio sirviente, ésta no puede imponerse livianamente[65].

Ahora bien, el propietario del predio dominante no adquiere, por la indemnización, la propiedad del paso, sino solamente el derecho de servidumbre, que no implica expropiación, sino limitación de la propiedad. Por esto, el dueño del predio sirviente puede seguir utilizando éste como mejor le convenga, con la condición de no obstaculizar el paso[66].

Finalmente, con relación a que la propiedad no se encuentre enclavada, el Tribunal Supremo ha expresado lo siguiente:

> [...] el hecho de que [una] finca tenga acceso a vía pública **no excluye la posibilidad de que ésta adquiera una servidumbre de paso por signo aparente**. Sabido es que la circunstancia de que una finca tenga acceso a camino público no impedirá la aplicación del Artículo 477. Si existe un signo aparente de la servidumbre de paso, ésta surgirá no empece a que el predio beneficiado ya tenga otro acceso a camino público, sea este directo o en virtud de otra servidumbre[67].

El derecho real de servidumbre se define como un gravamen impuesto sobre un bien inmueble, denominado predio sirviente, a beneficio de otro perteneciente a un dueño distinto, denominado

---

[63] *Díaz v. Con. Tit. Cond. El Monte N. Garden*, 132 DPR 452 (1993).

[64] *Soc. de Gananciales v. Mun. de Aguada, supra*, a la pág. 125.

[65] *Ciudad Real v. Municipio Vega Baja, supra*.

[66] *López Amaral v. Márquez*, 102 DPR 239, 245 (1974).

[67] *Díaz v. Con. Tit. Cond. El Monte N. Garden, supra*, pág. 469-470. (Énfasis suplido).

predio dominante[68]. El Código Civil clasifica las servidumbres según su naturaleza y características. Es decir, por razón de su origen, por su visibilidad o por su contenido. Así pues, las servidumbres pueden ser voluntarias o legales, según la voluntad de los propietarios de los predios involucrados o conforme a lo que disponga la ley[69]. Consecuentemente, "mientras las primeras dependen de la voluntad de los propietarios, **las segundas son aquellas cuyo título de constitución es la ley y, por lo tanto, el dueño del predio destinado a sufrirlas no puede impedir su nacimiento**". (Énfasis suplido)[70]. Ahora bien, en cuanto al modo de adquisición de dichas servidumbres, las servidumbres voluntarias se pueden adquirir por ley, por título, por prescripción o por signo aparente. En cambio, las servidumbres forzosas o legales tienen su génesis en una disposición legal que las crea.

Por otra parte, establece una distinción entre el tipo de servidumbres que pueden afectar a las tierras y dispone que estas pueden ser divididas en dos clases: personales y reales[71]. Las servidumbres reales, también conocidas como prediales, son aquellas que disfruta el propietario de una finca, constituidas sobre otra propiedad vecina para beneficio de aquella[72]. Se denominan así, toda vez que estableciéndose para beneficio de una propiedad, las obligaciones que la constituyen se prestan respecto de dicha propiedad y no respecto de la persona que sea su dueño[73].

En lo pertinente al caso que nos atañe, el estado de derecho vigente distingue, de entre las servidumbres prediales, las servidumbres de paso. Las servidumbres de paso[74] se rigen en

---

[68] Resaltamos que el cuerpo legal vigente en el momento de la presentación de la *Demanda* era el Código Civil del 1930. Art. 465 del Código Civil de Puerto Rico, 31 LPRA sec. 1631.
[69] Art. 472 del Código Civil, 31 LPRA sec. 1638.
[70] *Ciudad Real v. Municipio de Vega Baja*, 161 DPR 160, 172 (2004).
[71] Art. 467 del Código Civil, 31 LPRA sec. 1633.
[72] *Íd.*
[73] *Íd.*
[74] Arts. 500 al 506 del Código Civil, 31 LPRA secs. 1731 a 1737.

nuestro ordenamiento jurídico. Particularmente, el Art. 500 del Código Civil, establece **una servidumbre legal** de paso por finca enclavada. Dicho artículo dispone lo siguiente:

> El propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir paso por las heredades vecinas, previa la correspondiente indemnización.
>
> Si esta servidumbre se constituye de manera que pueda ser continuo su uso para todas las necesidades del predio dominante, estableciendo una vía permanente, la indemnización consistirá en el valor del terreno que se ocupe y en el importe de los perjuicios que se causen en el predio sirviente[75].

A tenor con lo antes expuesto, podemos colegir que, dicha disposición legal le concede el derecho al propietario de una finca enclavada a exigir que se le permita el paso por las propiedades vecinas, previa la correspondiente indemnización. Así pues, el Tribunal Supremo pautó los criterios que rigen la constitución y reconocimiento de una servidumbre de paso para una finca enclavada, a saber: (1) que el predio no tenga salida a camino público, o teniéndola, la misma no es bastante segura, practicable o suficiente; (2) que sea impuesta a la necesidad del predio dominante, es decir, que su anchura sea determinada de acuerdo al interés o necesidad del predio dominante; (3) que el aislamiento de la finca sin acceso a la vía pública no provenga de actos de la propia voluntad del dueño de dicho predio, como es el caso de haber obstruido con edificaciones la salida al camino existente; y por último, (4) que la servidumbre se conceda en vista a la necesidad y al mejor aprovechamiento del predio dominante, no a su comodidad, y que la necesidad sea presente, no remota o especulativa[76].

Al momento de conceder una servidumbre de paso se debe aplicar el principio de razonabilidad[77]. Se debe evaluar minuciosamente si en efecto la solicitud para que se constituya una

---

[75] [...] 31 LPRA sec. 1731.
[76] *Zayas v. Sucn. Daleccio,* 80 DPR 158, 181 (1957).
[77] *Íd.,* pág. 182.

servidumbre de paso es inspirada en la comodidad del solicitante o si se trata de una solicitud fundada en la necesidad o en el mejor aprovechamiento de este[78]. De considerar el Tribunal que procede la concesión de la servidumbre de paso por finca enclavada, la misma se debe dar por el sitio menos perjudicial al predio sirviente[79]. Consonó con lo anterior, por donde sea menor la distancia del predio dominante al camino público[80].

**-E-**

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir por sus propias apreciaciones, las determinaciones del foro de instancia[81]. Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba del foro sentenciador[82]. El fundamento de esta deferencia estriba en que el juez de primera instancia tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla[83]. En vista de esta deferencia, los tribunales apelativos no intervendremos "con la apreciación de la prueba reflejada en las determinaciones de hechos del tribunal apelado en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad, o que cometió un error manifiesto"[84].

---

[78] *Íd.*

[79] Art. 501 del Código Civil, 31 LPRA 1732.

[80] *Íd.*

[81] *Serrano Muñoz* v. *Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón* v. *Charlie Car Rental*, 148 DPR 420 (1999).

[82] *McConnell Jiménez v. Palau*, 161 DPR 734 (2004).

[83] *Sepúlveda v. Departamento de Salud*, 145 DPR 560 (1998).

[84] *Gómez Márquez, et als. v. Periódico El Oriental, et als*, 203 DPR 783; *Ramos Milano* v. *Wal-Mart Puerto Rico*, 168 DPR 112 (2006).

Sin embargo, cuando las conclusiones de hecho se basan en prueba pericial o documental, el tribunal de apelaciones se encuentra en la misma posición que el tribunal de instancia[85].

**-F-**

En nuestro ordenamiento jurídico, la concesión de costas en el litigio está gobernada por la Regla 44.1 de las de Procedimiento Civil[86]. En lo pertinente, ésta dispone que "le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión [...]"[87]. De acuerdo con la norma procesal, el criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra"[88].

La Regla también establece el procedimiento que se debe seguir para conceder las costas. En particular, el inciso (b) dispone que la parte reclamante tiene el término de diez (10) días, contados a partir de la notificación de la sentencia que le favorece, para presentar al tribunal, y notificar a la parte contraria, un memorando de costas[89]. El referido término de diez (10) días es de naturaleza jurisdiccional, tanto para presentar el memorando de costas como para notificar el mismo[90]. La naturaleza jurisdiccional del término para presentar y notificar un memorando de costas surge en virtud de la Regla 68.2 de Procedimiento Civil[91]. Por lo cual, este plazo es improrrogable y su cumplimiento tardío priva al tribunal de autoridad para considerar y aprobar las costas reclamadas[92].

---

[85] *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 884, 918 (2016); *González Hernández v. González Hernández,* 181 DPR 746 (2011).
[86] 32 LPRA Ap. V., R. 44.1.
[87] 32 LPRA Ap. V, R. 44.1.
[88] *Íd.*
[89] Regla 44.1(b) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1.
[90] *Rosario Domínguez v. ELA,* 198 DPR 197 (2017); *Comisionado v. Presidenta,* 166 DPR 513, 518 (2005).
[91] 32 LPRA Ap. V., R. 68.2.
[92] *Rosario Domínguez v. ELA, supra.*

Además, la Regla 44.1 señala en el inciso (d), que en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Aunque el concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil, se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia[93].

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos y con ello le ha causado innecesariamente molestias e inconvenientes[94]. La imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, depende de que el tribunal haga una determinación de temeridad.

Por último, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador"[95]. El tribunal impondrá la cuantía que el juzgador entienda que corresponde a la conducta temeraria[96]. Los criterios por evaluar y determinar si una parte litigante incurrió en temeridad son: (1) el grado de temeridad desplegada durante el litigio; (2) la naturaleza del procedimiento judicial; (3) los esfuerzos y la actividad profesional ejercida en el litigio; (4) la habilidad y reputación de los abogados[97].

Cónsono con lo anterior, reconocemos que de ordinario el ejercicio de las facultades discrecionales por el foro de primera instancia merece nuestra deferencia. Como corolario de lo anterior,

---

[93] *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713 (1987).
[94] *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843, 867 (2008); *Rivera v. Tiendas Pitusa, Inc.,* 148 DPR 695, 702 (1999).
[95] *Raoca Plumbing v. Trans World,* 114 DPR 464, 468 (1983).
[96] *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding,* 179 DPR 503, 519-520 (2010).
[97] *Asociación de Condóminos v. Trelles Reyes,* 120 DPR 574, 579 (1988).

sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo[98].

**III.**

El matrimonio Pagán-Oliveras nos solicita la revocación de la *Sentencia* emitida por el foro primario, mediante la cual determina que el matrimonio Villanueva-Oliveras es un tercero registral. El foro recurrido, razona que es válida la compraventa de la mencionada finca 10,106 y que el referido matrimonio adquirió la finca de acuerdo con las constancias del Registro de la Propiedad. Añade el TPI que, aun cuando existe cierta inexactitud entre el registro y la realidad extra registral en cuanto a la existencia o no de la franja de terreno que daría acceso a la finca del matrimonio Pagán-Oliveras, esto no puede incidir en el derecho real que posee el matrimonio Villanueva-Oliveras, debido a que este cumple con todos los requisitos hilvanados en el Art. 35 de la Ley Hipotecaria[99]. Ante ello, concluye que se le devuelva la franja de terreno ocupada por el matrimonio Pagán-Oliveras. No obstante, reconoce que esa decisión tornará la finca en una enclavada, pero que, a falta de partes, no está hábil para determinar cuál finca será la sirviente de la servidumbre para dar acceso a la finca del matrimonio Pagán-Oliveras, por lo que declara ha lugar la demanda presentada por el matrimonio Villanueva-Oliveras y concede tres mil quinientos dólares ($3,5000.00) por concepto de daños y perjuicios, dos mil setecientos dólares ($2,700.00) por pérdida del uso de la propiedad y concede cierta cantidad para sufragar las costas y honorarios del

---

[98] *Rivera Durán v. Banco Popular*, 152 DPR 140 (2000).
[99] 30 LPRA secc. 6050.

pleito y, finalmente, declara no ha lugar la reconvención presentada por el matrimonio Pagán-Oliveras.

Es norma reiterada que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia[100]. Esta deferencia hacia el foro primario responde al hecho de que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad[101]. Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Se exceptúan de la regla de deferencia, las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba[102].

En consideración a lo anterior, tras realizar un análisis integral de la prueba, este foro apelativo intermedio va a intervenir para evaluar si existe error manifiesto, prejuicio, parcialidad o pasión por parte del juzgador de los hechos[103]. En consecuencia, este foro intermedio está en la misma posición que el TPI en cuanto a la apreciación de prueba documental o pericial[104].

Así pues, conforme a dicho análisis, le corresponde a la parte que impugna el peso de probar que el dictamen fue arbitrario,

---

[100] *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

[101] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).

[102] *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011), *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894 (2011); *McConnell v. Palau,* 161 DPR 734 (2004).

[103] *Rolón García v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999); *López Vicil v. I.T.T. Intermedia, Inc.,* 142 DPR 857 (1997); *Pueblo v. Collado Justiniano,* 140 DPR 107 (1996).

[104] *Castrillo v. Maldonado*, 95 DPR 885 (1968).

irrazonable o que se tomó en ausencia de evidencia sustancial, todo lo cual implicaría error manifiesto[105]. Veamos.

El matrimonio Pagán-Oliveras alega ocho (8) errores. Destacamos que no se atenderá el error cuarto (4to) por estar relacionado con la apreciación de la prueba y, al carecer de una transcripción de la prueba oral o de una exposición narrativa estipulada, esto impide su evaluación.

Procedemos a discutir en conjunto los señalamientos de error primero, segundo y tercero, por estar íntimamente relacionados entre sí.

En síntesis, el matrimonio Pagán-Oliveras afirma que el TPI incide al determinar que el matrimonio Villanueva-Oliveras cumple con los requisitos consignados en el Artículo 35 de la Ley Hipotecaria, esto, debido a que, de las constancias del Registro de la Propiedad, se expone clara y expresamente las causas de la inexactitud registral. Fundamenta su cuestionamiento a base de la Escritura 74, otorgada el 8 de septiembre de 1971, cuando la finca #62 fue segregada del terreno del Gobierno, la Escritura 40 otorgada el 29 de abril de 1985, Plano de Segregación aprobado por ARPE hoy OGPe, y además esboza que, es de aplicación el Artículo 34 del Reglamento Número 3 de Planificación (1954)[106].

Tras examinar la prueba documental y las constancias del Registro de la Propiedad presentada durante el juicio en su fondo, surge que el matrimonio Villanueva-Oliveras es un tercero registral, adquiriente de buena fe, a título oneroso, en un negocio intervivos válido. En las determinaciones de hechos realizadas por el TPI, consta que el matrimonio Villanueva-Oliveras es el cuarto dueño

---

[105] *Gallardo v. Petiton,* 132 DPR 39 (1992); *Henríquez v. C.E.S.,* 120 DPR 194 (1987)*; Rivera Pérez v. Cruz Corchado,* 119 DPR 8 (1987); *Quintana Tirado v. Longoria,* 112 DPR 276 (1982).
[106] Reglamento de Lotificación, Segunda revisión, 30 de junio de 1954 Reglamento De Planificación Núm. 3 Junta de Planificación de Puerto Rico.

desde que se concedió el título[107], este análisis es cónsono con la prueba documental estipulada y las constancias del Registro de la Propiedad. Además, surge con claridad que desde comienzos de la década de los 70, las fincas objeto de este litigio fueron segregadas y compradas por adquirentes privados. Destacamos, además, que, el proyecto del Departamento de la Vivienda quedó inconcluso al no construir las calles que le darían acceso a la finca del matrimonio Pagán-Oliveras, por lo cual, el plano que en algún momento preparó dicha agencia, no refleja el estado real del área en controversia[108].

Así también, el matrimonio Villanueva-Oliveras logra establecer: todos los elementos de la acción reivindicatoria[109] a saber: (1) tiene que ser presentada por la persona que tenga a su favor un derecho de propiedad; (2) se debe dirigir contra la persona que tenga en su poder la cosa; (3) el demandado no puede oponer ningún derecho que justifique su pretensión de retener la cosa frente al propietario; y (4) la cosa que se reivindique debe ser debidamente identificada reivindicatorias[110]. Además, demostró la fuerza probatoria de su título y no en la debilidad o carencia del título de la parte demandada[111]. Señalamos destacar que, los planos presentados por los apelantes no <u>constituyen parte de la evidencia que puede utilizar un tribunal para restablecer a su verdadera situación los límites de diversos fundos</u>[112].

En resumen, conforme nuestro estado de derecho, los apelantes no presentan un mejor título, ni lo pueden producir. Por lo cual, el foro recurrido, correctamente, declaró con lugar una acción reivindicatoria a favor del matrimonio Villanueva-Oliveras.

---

[107] *Sentencia,* determinaciones de hechos #3, 12 y 17.
[108] *Sentencia,* determinaciones de hechos # 13 y 14.
[109] *Soc. Gananciales v. González Padín Co.,* 117 DPR 94 (1986); *Pérez Cruz v. Fernández Martínez,* 106 DPR 144 (1977), *Arce v. Díaz, supra.*
[110] *Girod Lube v. Ortiz Rolón,* 94 DPR 406, 413 (1967).
[111] *Castrillo v. Maldonado,* 95 DPR 885, 891 (1968)*, Sucn. Arce v. Sierra,* 70 DPR 841, 845 (1950); *Sucn. Meléndez v. Almodóvar,* 70 DPR 527, 532 (1949).
[112] *Íd.*

Punteamos que, del examen de la totalidad de la evidencia, nada de lo que señala el matrimonio Pagán-Oliveras en los errores aquí atendidos refleja que el TPI haya cometido algún error manifiesto o actuado con pasión, prejuicio o parcialidad al sopesar la prueba. La parte apelante no presenta prueba alguna que mine la credibilidad que le mereció al TPI y sus determinaciones de hechos y de derecho. Colegimos que los errores primero, segundo y tercero no fueron cometidos por el TPI, debido que este aplicó correctamente la norma jurídica al declarar al matrimonio Villanueva-Oliveras terceros registrales y la concesión del remedio solicitado, entiéndase la reivindicación del terreno.

Ahora bien, pasemos a revisar los errores quinto, sexto séptimo y octavo que alegan los apelantes. Esboza el matrimonio Pagán-Oliveras en su recurso que el TPI incidió: (5) al determinar que no está en posición de determinar sobre cual finca deberá construirse la servidumbre de paso para que ellos puedan acceder a su propiedad; (6) establecer que faltaba parte indispensable en el pleito por no estar los demás colindantes de la finca, y (7) carecer de elementos para imponer la justa compensación, incide en conceder las partidas de $2,700 por privación del disfrute del predio y (8) $3,500.00 por concepto de daños sufridos.

Al abordar el análisis de dichos errores, apuntalamos que, los apelantes no solicitaron la concesión de un remedio bajo los preceptos de servidumbre de paso, signo aparente o finca enclavada. Mas aún, y tras examinar el informe con antelación a juicio, surge que hubo un intento fallido de enmendar la reconvención para incluir otros remedios. Sin embargo, esto fue descartado y no concedido por el TPI, por haber sido debidamente objetado por la representación legal del matrimonio Villanueva-Oliveras. Así también, durante el juicio ocurren intentos de pasar prueba relacionadas a otros remedios no solicitados, los cuales no fueron

permitidos por el foro recurrido, porque fue debidamente objetado y anotado en el récord[113]. Además, surge del expediente que no se desfiló prueba demostrativa del monto de compensación para el establecimiento de una servidumbre de paso.

**No obstante, bajo las circunstancias particulares de este caso,** cabe preguntarnos, si los apelantes tienen algún remedio a concedérsele en este proceso apelativo. Para contestar ese cuestionamiento, debemos realizar el análisis jurídico conforme a la normativa que establece nuestro Tribunal Supremo en *Tec General v. AEE*[114], en donde reitera la norma adoptada y declarada que: *los tribunales apelativos no pueden considerar controversias que no le hayan sido planteadas, a menos que esto sea **necesario para evitar una injusticia manifiesta***[115]. *Es decir, los tribunales apelativos deben atenerse a resolver solamente aquellos asuntos que le hayan sido planteados en los recursos ante su consideración*[116]. *Por todo lo anterior, hemos sido enfáticos al expresar **que solamente a través de "un señalamiento de error y una discusión fundamentada, con referencia a los hechos y [...] fuentes de derecho en que se sustenta, podrá el foro apelativo atender los reclamos que se le plantean"**. (Énfasis suprimido)*[117].

Como adelantamos, el matrimonio Pagán-Oliveras arguye en su análisis jurídico que el foro recurrido incide al no conceder algún remedio, aun cuando reconoce que el terreno se encuentra enclavado dentro de varias fincas. Argumenta que, el TPI, al sostener esta determinación, equivale a dejarlos desprovistos totalmente de todo acceso a su vivienda, inclusive de a pie, *porque en caso de los demandantes coloquen un portón los demandados no tendrían forma*

---

[113] Véase Minutas del legajo original.
[114] 210 DPR 632, (2022).
[115] *Ortiz v Holsum,* 190 DPR 511, 527 (2014).
[116] *Íd.*
[117] *Morán v Martí,* 165 DPR 356, 366 (2005). Véase *Ortiz v Holsum, supra,* pág. 526.

*alguna de pasar hacia su propiedad. Lo anterior sería una crasa injusticia y una violación al sentido más elemental de justicia y equidad.* Entiende que debe aplicarse la normativa establecida en *Ibañez v Tribunal Superior*[118]*,* porque la finca está enclavada. Además, sugiere varias alternativas para determinar la compensación que deba satisfacerles al matrimonio Villanueva-Oliveras. Además, expone que el TPI tiene que proveer al menos, un remedio provisional a favor de los apelantes en lo que se dilucidaba cual sería el curso de acción a seguir respecto al derecho de servidumbre.

A los efectos de resolver esta situación, acogemos la conclusión del TPI en el sentido de que la finca del matrimonio Pagán-Oliveras está enclavada. Puntualizamos que, al amparo del Artículo 500 del Código Civil[119]: "[e]l propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir paso por las heredades vecinas, previa la correspondiente indemnización." El Artículo 501 dispone que la servidumbre de paso "debe darse por el punto menos perjudicial al predio sirviente, y en cuanto fuere conciliable con esta regla por donde sea menor la distancia del predio dominante al camino público[120]. Además, y, en lo aquí pertinente, el Artículo 502 establece que el ancho de la servidumbre de paso "será la que baste a las necesidades del predio dominante"[121].

Nótese, además, que el propietario del predio dominante solo tiene un derecho de paso, no de propiedad sobre la servidumbre, lo que solamente representa una limitación al derecho de propiedad del dueño del predio sirviente. Por ello, el dueño del predio sirviente

---

[118] 102 DPR 615 (1974).
[119] 31 LPRA secc. 1731.
[120] 31 LPRA secc. 1732.
[121] 31 LPRA secc. 1733.

puede seguir utilizando éste como mejor le convenga, con la condición de no obstaculizar el paso[122].

Así pues, a base de los hechos probados en el caso[123], procede proveer remedio a la situación de la finca enclavada del matrimonio Pagán-Oliveras. A diferencia del foro recurrido, entendemos que no es necesario la presencia de terceros para **para impartir justicia completa o de tal orden que no impida la confección de un decreto adecuado y completo para las partes originales en el litigio**[124]. Surge de la *Demanda* interpuesta por el matrimonio Villanueva-Oliveras, que desde el 2016 el matrimonio Pagán-Oliveras utilizó el terreno reivindicado como acceso a su propiedad. Ante ese cuadro, razonamos que, el matrimonio Pagán-Oliveras tiene derecho a exigir paso por la heredad del matrimonio Villanueva-Oliveras, sin restar que tiene que realizar la correspondiente indemnización.

En fin, para hacer justicia inmediata y conceder un remedio final, decretamos que se constituya una servidumbre de paso a favor del matrimonio Pagán-Oliveras, a los cuales les corresponde satisfacer al matrimonio Villanueva-Oliveras la cantidad de cinco mil dólares ($5,000.00) por la servidumbre actual, y dos pies adicionales de ancho, a todo lo largo de la servidumbre. De desear una extensión adicional al camino, serían dos mil dólares ($2,000.00) por cada dos pies, hasta un máximo de cinco pies. Conforme a lo resuelto aquí, procede eliminar la partida concedida de dos mil setecientos dólares ($2,700.00) por privación del disfrute del predio y la partida de tres mil quinientos dólares ($3,500.00) por concepto de daños sufridos.

---

[122] *López Amaral v. Márquez,* 102 DPR 239, 245 (1974).
[123] Véase determinación de hecho #15: Al cabo de varios años de que los demandados adquirieran la finca comenzaron a construir una propiedad. Para lograr acceder a la misma solicitan al demandante autorización para pasar por su finca y poder entrar y salir la misma mientras se lleva a cabo la construcción.
[124] *Romero v. S.L.G. Reyes*, 164 DPR 721, en la pág. 733.

En cuanto al auto de *certiorari*, la Regla 44.1 (d) de Procedimiento Civil[125] dispone que, la concesión o no de los mismos a la parte que prevaleció en un litigio dependerá de la determinación que haga el magistrado que presidió el proceso respecto a si la parte perdidosa, o su abogado, actuaron o no en forma temeraria o frívola[126]. Por ende, la concesión de los honorarios de abogado por temeridad depende de la discreción del tribunal sentenciador[127].

A la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, *supra*, no encontramos criterio alguno que nos mueva a expedir la petición presentada por el peticionario.

Nada en el legajo apelativo demuestra que el foro recurrido haya actuado con prejuicio, parcialidad, error manifiesto o abuso de su discreción, por lo que su dictamen nos merece deferencia. En consecuencia, denegamos la expedición del recurso debido a que no cumple con ninguno de los criterios enumerados en la Regla 40 de nuestro Reglamento, *supra*.

**IV.**

Por los fundamentos antes expuestos, ***modificamos*** la *Sentencia Final* apelada mediante el recurso KLAN202300986, a los efectos de eliminar la partida concedida de dos mil setecientos dólares ($2,700.00) por privación del disfrute del predio y los tres mil quinientos dólares ($3,500.00) por concepto de daños sufridos y, además, concedemos la cantidad de cinco mil dólares ($5,000.00) por la servidumbre actual, y dos pies adicionales de ancho, a todo lo largo de la servidumbre. De desear una extensión adicional al camino, se deberá pagar a favor del matrimonio Villanueva-Oliveras dos mil dólares ($2,000.00) por cada dos (2) pies, hasta un máximo

---

[125] 4 LPRA Ap. V.
[126] *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 736 (1990).
[127] *Revlon v. Las Américas Trust*, 135 DPR 363 (1994).

de cinco (5) pies. Relativo al auto de *Certiorari* KLCE202301223,

***denegamos*** el recurso.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones